J. S33010/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAVIER RAMOS, | : | No. 1215 EDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, January 31, 2013,
in the Court of Common Pleas of Lehigh County
Criminal Division at Nos. CP-39-CR-0002292-2012,
CP-39-CR-0002296-2012

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND STABILE, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:**FILED NOVEMBER 25, 2014**

Appellant appeals the judgment of sentence entered following his conviction for burglary, attempted burglary, criminal trespass, criminal mischief, theft by unlawful taking, receiving stolen property, and conspiracy, which arose from three burglaries committed in Lehigh and Northampton Counties in February and March of 2012.  Finding no merit in the issues on appeal, we will affirm.

Appellant raises the following issues on appeal:

> 1. Was the jury's verdict of "Guilty" at the end of the trial based upon insufficient evidence presented at trial, specifically as it relates to counts number seven, eight, nine, eleven, and twelve (7,8,9,11,12) in case 2296/2012?
>
> 2. Did the Trial Court err when it denied the Appellant's and Co-Defendant's Motions in

Limine, which requested that prison phone calls, which contained hearsay statements from uncharged individuals, not be allowed to be played for the jury?

3.  Did the Trial Court err when it denied the Appellant's request for a limiting instruction on the phone calls?

Appellant's brief at 4.

We find no error with the trial court's analysis. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, it is our determination that there is no merit to the questions raised on appeal. The trial court's meticulous, 26-page opinion, filed on August 20, 2013, comprehensively discusses and properly disposes of the questions presented. We will adopt it as our own and affirm on that basis.[1]

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014

---

[1] We would add to the trial court's analysis on the hearsay issue by noting that at no point does appellant identify to which statements he is objecting, nor does he explain how he was prejudiced by them. Thus, we also find this issue to be inadequately presented.

IIN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   |

          vs.              |     Nos. 2292, 2296 / 2012
                             |        1215 EDA 2013

JAVIER RAMOS,               |

         Appellant       |

**August 19, 2013**

## 1925(a) OPINION

Javier Ramos, Appellant, appeals from the judgment of sentence and denial of his post-trial motions in the above-captioned cases. He raises five allegations of error in the instant appeal. For the reasons set forth herein, Appellant's issues are meritless and the court respectfully recommends that the instant appeal be dismissed.

**Factual History**

Appellant and his co-defendant, David Lafantano, were involved in three burglaries which took place over the course of approximately one month in early-2012 in suburban areas of Lehigh and Northampton Counties.[1] The first incident occurred on February 16, 2012.[2] Candy Barr Heimbach was returning home to her residence at 7066 Dusseldorf Square, Bethlehem, Pennsylvania, from a business trip at approximately 6:00 in the evening.[3] When she arrived at her home, she discovered the back door to her house was wide open.[4] She found things displaced

---

[1] A fourth burglary out of Northampton was originally charged in the Informations against Appellant and his co-defendant, but due to a witness unavailability issue, the Commonwealth did not pursue those charges in the within case.
[2] N.T. Vol. 2, at 10.
[3] Id.
[4] N.T. Vol. 2, at 11.

A-2                          1

throughout her house.[5] It was still completely warm inside her house despite the open door and temperatures outside being in the twenties.[6]

Ms. Heimbach returned to her car and went to a neighbor for help.[7] Her neighbor's wife called the State Police.[8] After the police arrived and secured the house, Ms. Heimbach was allowed inside.[9] She observed that the perpetrators gained entry through a window.[10]

Police walked Ms. Heimbach through her house.[11] She testified things were missing and indicated the house had been trashed.[12] Jewelry and a laptop computer were taken from the guest room, as well as several laptops from the family room, a camera, an iPod, an iPhone, an electric guitar, a Wii, and an Xbox 360 belonging to Ms. Heimbach's son.[13] The user name on the Xbox Live account associated with the Xbox 360 console was "SemperAequus."[14] In the master bedroom, Ms. Heimbach's husband's pillow case had been taken along with numerous jewelry items.[15] Ms. Heimbach testified that in April of 2011, she and her husband had used a company called Class Act Landscaping for landscaping purposes.[16]

---

[5] Id.
[6] Id.
[7] N.T. Vol. 2, at 11.
[8] Id.
[9] N.T. Vol. 2, at 12.
[10] N.T. Vol. 2, at 12-13.
[11] Id.
[12] Id.
[13] N.T. Vol. 2, at 15.
[14] N.T. Vol. 2, at 197. As a minor point of clarification, the testimony at trial incorrectly identified the username "SemperAequus 2455." Id. However, photographs of the screen admitted into evidence which display this username show that the actual username is only "SemperAequus," and the "2455" is the user's "Gamerscore," a points system maintained by the Xbox Live account. See Cmwth. Exhibit 56. Nonetheless, neither Appellant nor his co-defendant contested that the username SemperAequus belongs to Ms. Heimbach's son.
[15] Id.
[16] See N.T. Vol. 2, at 25.

A-3

Trooper Jason R. Trautman, who works in the Pennsylvania State Police Forensic Services Unit, testified that he went to Ms. Heimbach's residence to aid in the investigation.[17] Trooper Trautman collected certain items from the scene for processing.[18]

On February 28, 2012, Veronica Ciraulo of 3503 Courtney Drive, Upper Saucon Township, Lehigh County, returned home from work in the evening to find the door to her basement was open and the light was on downstairs.[19] A sliding glass door near her kitchen was completely open.[20] A 32" Samsung television[21] was missing from the family room, and Ms. Ciraulo found that several drawers and other pieces of furniture had been opened or otherwise disturbed.[22] A back window leading into a bar area in the Ciraulos' basement was broken.[23]

Ms. Ciraulo called the police, who arrived and did a walk-through of the house with her.[24] In addition to the television, Ms. Ciraulo testified that her husband's iPad had been taken,[25] along with jewelry, a Timex watch, and some cash.[26] In her bedroom, Ms. Ciraulo found that her husband's pillow case was removed and the pillow was thrown on the floor.[27] Ms. Ciraulo testified that in the Fall of 2011, she and her husband used Class Act Landscaping for some work on their property.[28] Ms. Ciraulo further testified that neither defendant had permission to be on her property on the date of the burglary.[29]

---

[17] N.T. Vol. 2, at 119.
[18] N.T. Vol. 2, at 136.
[19] N.T. Vol. 2, at 31-32.
[20] N.T. Vol. 2, at 32.
[21] N.T. Vol. 2, at 36.
[22] N.T. Vol. 2, at 33.
[23] N.T. Vol. 2, at 40.
[24] Id.
[25] N.T. Vol. 2, at 36.
[26] N.T. Vol. 2, at 38-39.
[27] Id.
[28] N.T. Vol. 2, at 43.
[29] Id.

3

A-4

Detective Joseph Pochran arrived on the scene of the Ciraulo burglary in order to conduct an investigation.[30] Detective Pochran learned that a neighbor had surveillance cameras outside his home.[31] The video depicts a black SUV driving around the neighborhood and backing into Ms. Ciraulo's driveway.[32] A mail truck can be seen driving by the Ciraulo residence.[33]

On March 12, 2012, Dana Wooley of 1440 Saratoga Circle in Breiningsvilla, Pennsylvania, was at home alone at approximately 8:45 in the morning.[34] She took a shower and finished just after 9:00.[35] She went into another room of her house overlooking her driveway, which comes up from the street to a side-entrance garage.[36] Ms. Wooley looked out the window and saw a dark SUV with shiny rims backed into her driveway.[37] She observed a person emerging from the front passenger side of the SUV and stepping around toward the back.[38] The license plate was covered on the vehicle by something resembling a light cloth, either pink or peach in color.[39] The person who got out of the vehicle was wearing a grayish-black hooded sweatshirt with a red baseball cap and red sneakers.[40] Ms. Wooley was approximately twenty feet up while she observed this and testified she had a clear view of that person's face.[41]

The person standing outside the SUV tightened the hood on his sweatshirt around the baseball cap and walked toward the rear of the house.[42] Upon observing this, Ms. Wooley called 911.[43] While on the phone with 911, Ms. Wooley heard rustling and the sound of a person

---

[30] N.T. Vol. 2, at 146.
[31] N.T. Vol. 2, at 148.
[32] Cmwth. Exhibit 59.
[33] Id.
[34] N.T. Vol. 1, at 106-08.
[35] N.T. Vol. 1, at 108.
[36] Id.
[37] Id.
[38] Id.
[39] N.T. Vol. 1, at 110.
[40] N.T. Vol. 1, at 109.
[41] Id.
[42] N.T. Vol. 1, at 109-10.
[43] N.T. Vol. 1, at 111.

4

A.5

possibly trying to open doors from outside.[44] Ms. Wooley proceeded to a window looking out the front of her house and saw a second "scruffy looking" individual without much hair on his head wearing a gray colored shirt and jeans.[45] Ms. Wooley further testified that while the men were at her house, she heard something break, which she later realized was a glass window.[46]

While Ms. Wooley was on the phone with dispatch, she watched the black SUV leave her driveway, this time with the license plate uncovered and the cloth removed.[47] She advised the dispatcher that it was a Pennsylvania plate.[48] She watched the SUV drive up the road toward Ziegels Church Road.[49] Ms. Wooley testified she could see a police car's lights as it approached the intersection and she told the dispatcher that the officer was going to run right into the SUV.[50]

The police car Ms. Wooley saw was being driven by Pennsylvania State Trooper Patrick Dawe, who was responding to the call at Ms. Wooley's house.[51] Trooper Dawe testified that as he drove past Saratoga Circle on Ziegels Church Road, he observed a black SUV with shiny rims in a driveway on Saratoga Circle.[52] Trooper Dawe testified that he saw the black Ford Experdition SUV back out onto Saratoga Circle and make a left onto Ziegel's Church Road.[53] Because it was driving the opposite direction from him, Trooper Dawe turned his vehicle around and activated his lights and sirens to initiate a traffic stop of the vehicle.[54] The vehicle pulled

---

[44] N.T. Vol. 1, at 112.
[45] N.T. Vol. 1, at 112.
[46] N.T. Vol. 1, at 114.
[47] Id.
[48] Id.
[49] N.T. Vol. 1, at 115.
[50] Id.
[51] N.T. Vol. 2, at 81.
[52] Id.
[53] N.T. Vol. 2, at 82.
[54] N.T. Vol. 2, at 82-83.

A - C

over into the nearby Ziegel's Church parking lot.[55] The license plate number for the black SUV was HPJ 8699.[56]

Trooper Dawe exited his vehicle and approached the SUV.[57] The driver was Appellant's co-defendant, David Lafantano.[58] Appellant was in the front passenger seat.[59] After backup arrived for Trooper Dawe, the officers asked Appellant and Lafantano to step out of their vehicle.[60] Trooper Dawe spoke separately to Lafantano, who indicated he was Appellant's brother-in-law and they were attempting to solicit work on their own from Class Act Landscaping contacts.[61] He indicated they had stopped at a house on Saratoga Circle.[62] Lafantano told Dawe that Appellant remained in the vehicle while he got out, approached the front door, rang the doorbell and knocked, and the two men left when there was no answer.[63]

Trooper Dawe then spoke to Appellant. Appellant denied being related to Lafantano.[64] He told Dawe that they were trying to solicit work from their old landscaping company's clients.[65] Appellant's account of the events at Ms. Wooley's house were the same as Lafantano's, that Lafantano approached the door, knocked and rang the doorbell, and came back to the SUV after no one answered.[66]

While the vehicle stop was occurring, Trooper Jonathan Gerkin of the Pennsylvania State Police Criminal Investigation Unit arrived and spoke to Ms. Wooley briefly at her home.[67] He

---

[55] N.T. Vol. 2, at 84.
[56] Id.
[57] N.T. Vol. 2, at 85.
[58] Id.
[59] Id.
[60] N.T. Vol. 2, at 86-87.
[61] N.T. Vol. 2, at 87.
[62] N.T. Vol. 2, at 88.
[63] Id.
[64] N.T. Vol. 2, at 89.
[65] Id.
[66] Id.
[67] N.T. Vol. 2, at 183.

A.7

observed the physical damage to her residence, including damage to the rear of the house.[68] Gerkin and Ms. Wooley went outside and saw a fence was left open leading to the back yard[69] and observed the broken window to the family room with the screen lying on her deck.[70] The screen had been in the window the previous evening, not on the deck.[71]

Upon being advised that the black SUV had been stopped by Trooper Dawe, Gerkin took Ms. Wooley to that location for a "show-up."[72] Prior to taking her there, Gerkin advised Ms. Wooley that he was taking her to an area where a traffic stop was conducted.[73] Gerkin further noted the individuals present may or may not be involved, and that it was just as important to rule out innocent people as it was to identify the perpetrators.[74]

Trooper Gerkin slowly drove Ms. Wooley past the Defendants while the vehicle remained in the street and the suspects stood in the church parking lot approximately twenty to thirty feet away.[75] The weather conditions were clear with a bright and sunny sky.[76] The Defendants were not handcuffed and stood within a few feet of each other while continuing to face one direction as Trooper Gerkin and Ms. Wooley drove by.[77] As they drove past, Ms. Wooley positively identified Appellant and Lafantano as the two individuals she saw at her house.[78] Trooper Gerkin relayed that information to Trooper Dawe and Appellant and his co-defendant were arrested.[79]

---

[68] Id.
[69] N.T. Vol. 1, at 119.
[70] N.T. Vol. 1, at 116.
[71] N.T. Vol. 1, at 121-22.
[72] Id.
[73] N.T. Vol. 2, at 184.
[74] Id.
[75] N.T. Vol. 2, at 185.
[76] N.T. Vol. 2, at 98.
[77] N.T. Vol. 2, at 91.
[78] N.T. Vol. 2, at 185.
[79] N.T. Vol. 2, at 91, 185.

A. 9

Trooper Thomas M. Durilla of the Pennsylvania State Police was contacted to assist in searching the Ford Expedition and obtaining items as evidence from the vehicle.[80] Within the vehicle, Trooper Durilla and another officer, Trooper Robert Devers, located green New York Jets gloves in the doors of the vehicle, a pair of red and tan gloves, two screwdrivers, and an oil-soaked pink rag.[81] State police obtained a warrant to search and secure the items in the vehicle.[82]

Trooper Gerkin subsequently communicated with Trooper Seiple and Detective Pochran, the lead investigators of the Heimbach and Ciraulo burglaries, respectively.[83] Two and a half years prior, Ms. Wooley had used Class Act Landscaping,[84] similar to the victims of the Heimbach and Ciraulo burglaries. Thomas Duffy, the owner of Class Act Landscaping, testified that Appellant and his co-defendant worked for Class Act up through the Fall of 2011.[85] Appellant had worked off and on for approximately two or three years, and his co-defendant worked for approximately four.[86]

After Appellant and his co-defendant were arrested, Appellant had frequent contact in the form of prison visits and telephone calls with his girlfriend, Allison Wanamaker.[87] Prisoners are notified their telephone communications are recorded.[88] While Appellant was in prison, his recorded conversations with Ms. Wanamaker included references to an Xbox and a TV, along with an indication that the Xbox was in Ms. Wanamaker's home courtesy of "the electronics

---

[80] N.T. Vol. 2, at 101-02.
[81] N.T. Vol. 2, at 103.
[82] N.T. Vol. 3, at 16.
[83] N.T. Vol. 2, at 190.
[84] N.T. Vol. 1, at 122.
[85] N.T. Vol. 3, at 52-53.
[86] N.T. Vol. 3, at 57-58.
[87] N.T. Vol. 3, at 41.
[88] N.T. Vol. 3, at 47.

A.9

fairy."[89] Based on information obtained from these communications, Trooper Gerkin proceeded to the Wanamaker residence.[90]

On April 13, 2012, Trooper Gerkin made contact with Fay Wanamaker of 311 East 21st Street, Northampton, Pennylvania.[91] Fay is Allison Wanamaker's mother; the two women live together in Fay Wanamaker's home.[92] Fay Wanamaker testified that on April 13, 2012, police arrived and advised her they were looking for stolen items that they had reason to believe were in her home.[93] Mrs. Wanamaker gave consent for the officers to search her home.[94]

Trooper Gerkin and Trooper Durilla searched Mrs. Wanamaker's residence.[95] In the attic, the officers located a 32" Samsung television and a clear bin with a red lid.[96] Inside the bin was an Xbox 360 and several shoe boxes with the name "Javier" on them.[97] Mrs. Wanamaker testified that she did not recognize these items, had not placed them in her home, and had not given anyone permission to store them in her home, though people frequently kept things in her home.[98] Mrs. Wanamaker did not recognize Appellant or his co-defendant.[99] The television was identified as the one stolen from the Ciraulo residence.[100]

Trooper Gerkin took the Xbox 360 he seized from the Wanamaker residence for analysis.[101] The Xbox Live screen name associated with that Xbox 360 was "SemperAequus,"[102]

---

[89] Cmwth. Exhibit 61.
[90] N.T. Vol. 2, at 191.
[91] Id.
[92] N.T. Vol. 2, at 63, 65.
[93] N.T. Vol. 2, at 64.
[94] Id.
[95] N.T. Vol. 2, at 191-92.
[96] N.T. Vol. 2, at 192.
[97] Id.
[98] N.T. Vol. 2, at 65-66.
[99] N.T. Vol. 2, at 68-69.
[100] N.T. Vol. 2, at 44.
[101] N.T. Vol. 2, at 194.
[102] N.T. Vol. 2, at 194-95. *See* n.15, *supra*, regarding the username.

9

A-10

the same name associated with Ms. Heimbach's son's stolen Xbox 360 from the Heimbach burglary.[103]

A search warrant was obtained and executed on April 13, 2012 in order to obtain and search two cell phones police located in the Ford Expedition SUV, which was still in impound.[104] The phones were sent to Detective Pochran, who is also in charge of the Lehigh County Computer Crimes Task Force.[105] Using technology called a Cellebrite UFED, which is capable of extracting data from, *inter alia*, cell phones, Detective Pochran was able to obtain information including text messages from phones subject to forensic analysis.[106] A text message sent on February 28, 2012, the same date as the Ciraulo burglary, at 9:29:24 indicated "mailman just went by."[107]

Gerald Tate, a cellular radio frequency engineer for AT&T, testified as an expert at trial in this matter.[108] While no cellular activity was recorded for February 16, 2012, the date of the Heimbach burglary, cell phone activity placed Appellant and his co-defendant's telephones in the area of the Ciraulo residence on February 28, 2012 at 9:26 a.m.,[109] approximately one mile away from a nearby cell tower.[110] An audio recording from a prison visit between Appellant and Allison Wanamaker included reference by Appellant that the phones in the SUV belonged to him and his co-defendant.[111]

---

103 N.T. Vol. 2, at 197.
104 N.T. Vol. 3, at 16-17.
105 N.T. Vol. 2, at 159.
106 N.T. Vol. 2, at 160-61.
107 N.T. Vol. 2, at 168.
108 N.T. Vol. 3, at 50.
109 N.T. Vol. 3, at 58-60.
110 N.T. Vol. 3, at 65-66.
111 *See* Cmwlth. Exhibit 60.

## Procedural History

Two Criminal Informations were filed against each defendant. In Case Nos. 2296 (Appellant) and 2298 (Lafantano), the defendants were charged with Burglary, Criminal Trespass, Theft by Unlawful Taking, Receiving Stolen Property, Criminal Mischief, and Conspiracy related to the Heimbach and Ciraulo burglaries. The other Informations, Case Nos. 2292 (Appellant) and 2295 (Lafantano) charged the Defendants with offenses stemming solely from the incident at Ms. Wooley's home on March 12, 2012.

Appellant and his co-defendant were arraigned on July 5, 2012. On September 5, 2012, this Court conducted a pretrial hearing on several omnibus pretrial motions filed by both defendants, including a Motion to Suppress Ms. Wooley's identification of the defendants and a Motion for Joinder for trial of the informations filed by the Commonwealth. On September 19, 2012, the suppression motion was denied and the motion for joinder was granted by Order with an accompanying Memorandum Opinion.

A jury trial commenced on December 10, 2012. Following a three-day trial, the jury returned a verdict of Guilty on the Receiving Stolen Property charge from the Heimbach burglary and a verdict of Not Guilty on all other charges related to that burglary incident. The jury convicted Appellant on all charges related to the Ciraulo burglary incident. Finally, the jury convicted Appellant on charges of Attempted Burglary, Criminal Trespass, Criminal Mischief, and Criminal Conspiracy to Commit Burglary relevant to the Wooley incident, but returned a verdict of Not Guilty on the charge of Burglary stemming from that matter. Following trial, a presentence investigation report was ordered and a sentencing hearing date was scheduled.

On January 31, 2013, Appellant received an aggregate sentence of eighteen (18) to forty-two (42) years in a state correctional institution.

A.12

11

On February 11, 2013, Appellant filed post-trial motions which included a Motion for Reconsideration of Sentence and a Motion for New Trial on the basis that the verdict was against the weight of the evidence relevant to the Ciraulo burglary except for the Receiving Stolen Property conviction related to that incident.

The Motion for Reconsideration was denied on February 12, 2013. An argument was conducted on March 19, 2013 to address the weight of the evidence issue. On March 22, 2013, the Motion for New Trial was denied as well.

Appellant filed a Notice of Appeal on April 19, 2013. The Notes of Testimony were ordered to be transcribed and Appellant was ordered to file a Concise Statement of Matters Complained of on Appeal (1925(b) Statement). Appellant filed his 1925(b) Statement on May 13, 2013. This Opinion follows.

**Discussion**

In his 1925(b) Statement, Appellant raises five issues, which are summarized as follows:

1. The jury's verdict for counts 7, 8, 9, 11, 12 in 2296/2012 (the Ciraulo burglary) was against the weight of evidence and this Court erred in denying Appellant's post-sentence motion;

2. The jury's verdict for counts 7, 8, 9, 11, 12 in 2296/2012 (the Ciraulo burglary) was based upon insufficient evidence;

3. The court erred in denying Appellant's post-sentence motion for reconsideration of sentence because the sentence Appellant received was harsh and excessive and contravened the fundamental norms of the sentencing process;

4. The Court erred by denying Appellant's motion in limine regarding prison phone calls which contained hearsay and uncharged co-conspirator statements;

5. The Court erred by denying Appellant's request for a limiting instruction pertaining to evidence of prison phone calls insofar as the jury's consideration of the calls should have been limited to Receiving Stolen Property and Conspiracy to Commit Receiving Stolen Property alone.

(1925(b) Statement.)

A-13

*Weight of the Evidence*

Appellant's Motion for New Trial argued the jury's verdict was against the weight of the evidence with respect to the Burglary and related convictions for the burglary at the Ciraulo residence.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Begley*, 780 A.2d 605, 619 (Pa. 2001); *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995). Therefore, the jury's verdict may only be reversed "if it is so contrary to the evidence as to shock one's sense of justice." *Begley*, 780 A.2d at 619 (citing *Commonwealth v. Hawkins*, 701 A.2d 492, 500 (Pa. 1997)); *see also Commonwealth v. Ross*, 856 A.2d 93, 99, (Pa. Super. 2004) (citing *Commonwealth v. McCloskey*, 835 A.2d 801 (Pa. Super. 2003), stating "[t]he determination of the weight of the evidence exclusively is within the province of the fact-finder, who may believe all, part, or none of the evidence."). "Where the evidence is conflicting, the credibility of the witnesses is solely for the jury and if its finding is supported by the record, the trial court's denial of a motion for a new trial will not be disturbed" on appeal. *Commonwealth v. Hayes*, 209 A.2d 38, 41 (Pa. Super. 1965).

"A new trial should not be granted because of a mere conflict in testimony or because the judge on the same facts would have arrived at a different conclusion.... Trial judges ... do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Commonwealth v. Hunter*, 768 A.2d 1136, 1143 (Pa. Super. 2001) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751-52) (Pa. 2000)).

13

A·14

Ultimately, "[t]he decision to grant or deny a motion for a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court." *Commonwealth v. Pronkoskie*, 445 A.2d 1203, 1206 (Pa. 1982). Absent an abuse of discretion, a trial court's denial of such a motion will not be disturbed. *Commonwealth v. Zapata*, 290 A.2d 114, 117 (Pa. 1972) (citations omitted).

In this case, the jury's verdict was consistent with the weight of the evidence. The Commonwealth presented a strong circumstantial case demonstrating Appellant and his co-defendant were the perpetrators of the Ciraulo residential burglary. On or around February 28, 2012, there was a report of a burglary at a residence in Center Valley, Pennsylvania. The perpetrators had entered the residence by breaking a north-facing basement window. Surveillance footage showed a black sports utility vehicle (SUV) like the one in which the co-defendants were apprehended drive slowly past the residence, and then return a short time later and back into the driveway. The Ciraulos, like the other victims of the within string of burglaries, were customers of Class Act Landscaping.

Appellant and Lafantano's cell phones were seized subsequent to their arrest following the incident at Ms. Wooley's residence. A forensic search of the cell phones revealed communications relevant to the Ciraulo burglary, specifically a text regarding the presence of the mailman driving by the residence at the time of the burglary. The cell phone records presented by Mr. Tate, the expert witness from AT&T, indicated Appellant and his co-defendant's phones were near the Ciraulo residence at the time of the burglary. Additionally, a 32" Samsung television taken from the Ciraulos was recovered in the attic of Appellant's girlfriend's mother. Prison recordings between Appellant and his girlfriend, Allison Wanamaker, made reference to a television and other electronics.

14

A-15

In his post-sentence motion, Appellant argued the jury's verdict was against the weight of the evidence for the Ciraulo burglary for several reasons. First, there were no confessions made by either defendant regarding the Ciraulo burglary. Second, there were no eyewitnesses to the crime. Third, no direct evidence placed the Defendant at the Ciraulo residence at the time of the burglary.

Even taking into consideration all of the Defendant's arguments, the Court nonetheless concluded the jury's verdict was consistent with the weight of the evidence. The Commonwealth's case was largely circumstantial, but it was strong enough to support a conviction. The Commonwealth proved Appellant and his co-defendant were engaged in a common scheme to burglarize residences belonging to customers of Class Act landscaping, the company for which they worked. All of the evidence the Commonwealth presented was consistent with the verdict. The absence of confessions, eyewitnesses, or direct evidence does not vitiate the Commonwealth's case against Appellant. Upon a review of all of the evidence presented, the jury's verdict with respect to the charges surrounding the Ciraulo residence does not shock the Court's sense of justice. Accordingly, reversing the verdict and granting a new trial would have been improper and the post-sentence motion was properly denied. No relief is due on appeal.

*Sufficiency of the Evidence*

The standard of review on challenges to sufficiency of the evidence is well-established:

> In reviewing the sufficiency of the evidence, [the Superior Court] must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offenses beyond a reasonable doubt.

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not be absolutely



A. 16

incompatible with the defendant's innocence, but the question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The proper application of this standard requires us to evaluate the entire trial record, and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence. Our law is crystal clear that the trier of fact, in passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence presented. The Superior Court may not reweigh the evidence and substitute [its] judgment for that of the finder of fact. If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict.

*Commonwealth v. Hopkins*, 747 A.2d 910, 913-14 (Pa. Super. 2000) (citations omitted).

In this case, the jury returned a verdict of Guilty on counts of Burglary,[112] graded as a Felony of the First Degree, Criminal Trespass,[113] graded as a Felony of the Third Degree, Theft by Unlawful Taking or Disposition,[114] graded as a Felony of the Third Degree, Criminal Mischief,[115] graded as a Misdemeanor of the Third Degree, and Criminal Conspiracy to Commit, *inter alia*, Burglary,[116] graded as a Felony of the First Degree.[117] All of these counts stem from the Ciraulo burglary incident. The Court will now address the sufficiency of the evidence with respect to each of the individual charges.

## Burglary

"A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein." 18 Pa.C.S. §

---

[112] 18 Pa.C.S.A. § 3502(a).
[113] 18 Pa.C.S.A. § 3503(a)(1)(i).
[114] 18 Pa.C.S.A. § 3921(a).
[115] 18 Pa.C.S.A. § 3304(a)(5).
[116] 18 Pa.C.S.A. §§ 903(a), 3502(a).
[117] The jury also convicted Appellant on a charge of Receiving Stolen Property relevant to the Ciraulo residence burglary, but because that conviction is not challenged on appeal, it is not addressed herein.

16

3502(a).[118] "The intent to commit *a crime* after entry may be inferred from the circumstances surrounding the incident. This intent may be inferred from actions as well as words. However, actions must bear a reasonable relation to the commission of a crime." *Commonwealth v. Alston*, 651 A.2d 1092, 1094 (Pa. 1994) (citations omitted).

In this case, the evidence showed that Appellant and his co-defendant engaged in a common plan or scheme to burglarize the homes of Class Act Landscaping customers. Specifically with respect to the Ciraulo burglary, the evidence showed that the defendants were in the vicinity of the Ciraulo residence, exchanged a text about a mailman driving through the area at that time, and backed the same black Ford Expedition into the Ciraulos' driveway that they backed into Ms. Wooley's driveway two weeks later. The Ciraulos' home was broken into and jewelry and electronics items were removed from the premises. A television stolen from that residence was later located at Mrs. Wanamaker's house near shoeboxes with the name "Javier" on them. All of this strongly supports the conclusion Appellant and his co-defendant entered the Ciraulo residence and the inference of their intent to commit a crime once inside. Accordingly, the evidence was sufficient to support the Burglary conviction.[119]

### Criminal Trespass

A person commits Criminal Trespass when, "knowing that he is not licensed to do so, he . . . enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured portion thereof." 18 Pa.C.S. § 3503(a)(1)(i). Thus, the Commonwealth must prove a defendant (1) entered the premises, (2) was not licensed to do so,

---

[118] The Court notes that the Burglary statute has since been amended to include additional language breaking down the elements of the offense. The definition applied herein was in effect at the time of the crimes.

[119] Even if he was not the one who actually broke into the Ciraulo residence, the actions of Appellant's co-defendant are attributable to him under both accomplice liability and culpability as a convicted co-conspirator. *See, e.g., Commonwealth v. Lambert*, 795 A.2d 1010, 1024 (Pa. Super. 2002) (driver of getaway car liable for burglary through accomplice liability theory despite never entering property burglarized by co-defendant).

17

A-18

and (3) knew he was not licensed to do so. *Commonwealth v. Goldsborough*, 426 A.2d 126, 127 (Pa. Super. 1981).

In this case, the evidence showed that Appellant and his co-defendant were in the area of the Ciraulo household at the time of the burglary. Their black SUV is observable on the surveillance footage captured by a neighbor as it backs into the Ciraulos' driveway. Entry was gained by breaking a rear window leading into the basement. The television taken from the Ciraulo home was located at Mrs. Wanamaker's residence near shoeboxes with Appellant's name on them. This demonstrates through strong circumstantial evidence that Appellant and his co-defendant entered the Ciraulo premises. The method of entry through a rear window is consistent with knowledge by Appellant and his co-defendant they did not have a license to enter. Finally, Ms. Ciraulo testified that neither defendant had permission to be at her residence on the date of the burglary. Based on all of the foregoing, the evidence was sufficient to sustain a conviction for Criminal Trespass against Appellant.

### Theft by Unlawful Taking

"A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Here, a number of items were taken from the Ciraulo residence, including a 32" Samsung television. The television was later recovered at Fay Wanamaker's home. Appellant's girlfriend, Allison Wanamaker, resides with Mrs. Wanamaker. The television was found near several shoeboxes with "Javier" written on the side of them. Further, Appellant and Allison Wanamaker communicated subsequent to Appellant's arrest about the television. Appellant's co-defendant and his wife also had communications while he was in prison concerning proceeds from the burglaries. All of this evidence demonstrates that Appellant exercised unlawful control over the

A·19

18

Ciraulos' property with intent to deprive them of that property. Accordingly, the evidence was sufficient to sustain Appellant's conviction for Theft by Unlawful Taking.

## Criminal Mischief

A person is guilty of criminal mischief if he "intentionally damages real or personal property of another." 18 Pa.C.S.A. § 3304(a)(5). As discussed in detail above, the evidence demonstrated that Appellant and his co-defendant were the perpetrators of the Ciraulo burglary. To gain entry into the residence, a basement window was broken by the perpetrators. Intent to cause the damage to the window can be inferred from the fact that the window was broken in furtherance of a burglary. Accordingly, the evidence was sufficient to support Appellant's conviction for Criminal Mischief for breaking the basement window.

## Criminal Conspiracy

The Appellant's remaining convictions were for Conspiracy to Commit Burglary, Criminal Trespass, Theft, Receiving Stolen Property, and Criminal Mischief. The law regarding conspiracy is well-established:

> The essence of conspiracy is a common understanding or agreement. However, the Commonwealth is not required to establish the existence of a conspiracy by direct proof or an explicit or formal agreement. Indeed, direct proof of an explicit or formal agreement to commit a crime can seldom, if ever, be supplied and it need not be for it is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence. The nature of the crime usually makes it susceptible of no other proof than by circumstantial evidence. To assist the finder of fact in determining whether a corrupt confederation is present, the relationship and conduct of the parties and the circumstances surrounding their activities can be examined to deduce, inferentially, if a conspiracy exists.

*Commonwealth v. Robinson*, 505 A.2d 997, 1000 (Pa. Super. 1986) (citations omitted).

19

A- 20

Each co-conspirator is liable for acts committed by other co-conspirators in furtherance of the conspiracy. *Id.* at 1001 (citation omitted). Finally, the existence of a conspiracy may be proven circumstantially. *Id.*

In this case, the evidence supported an inference to be drawn that both the Appellant and his co-defendant worked together under a common understanding that they would enter the homes of former Class Act Landscaping clients, take jewelry and electronics from those homes, and retain or sell them. The evidence referring to activity of Appellant and his co-defendant's cell phones in the area of the Ciraulo residence, the communication between them regarding the mailman seen driving by on the surveillance video, and the subsequent storing of the television identified as the one taken from the Ciraulo residence in Mrs. Wanamaker's attic all demonstrate that Appellant and his co-defendant conspired to commit the various crimes charged.

In sum, the Commonwealth presented a strong circumstantial case linking Appellant and his co-defendant directly to the Ciraulo burglary. The jury convicted them on all charges related to that burglary, and upon a review of the totality of the evidence offered at trial in support thereof, the jury's verdict was consistent with that evidence. No relief is due on appeal.

*Discretionary Aspects of Sentencing*

Trial courts are afforded broad discretion in sentencing. *Commonwealth v. Miller*, 835 A.2d 377, 380 (Pa. Super. 2003); *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002). A sentence will not be disturbed absent an abuse of that discretion. *Mouzon*, 812 A.2d at 621 (citing *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001)). A four-pronged analysis is required before the Superior Court will review the merits of a challenge to the discretionary aspects of a sentence. *See Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa. Super. 2005). These prongs are:

20

A-21

(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citations omitted).

Whether something constitutes a substantial question is evaluated on a case-by-case basis. *Commonwealth v. Anderson,* 830 A.2d 1013, 1018 (Pa. Super. 2003) (citing *Commonwealth v. Losch,* 535 A.2d 115, 119 n.7 (Pa. Super. 1987)). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra,* 752 A.2d 910, 913 (Pa. Super. 2000) (quoting *Commonwealth v. Brown,* 741 A.2d 726, 735 (Pa. Super. 1999) (*en banc*), *appeal denied,* 567 Pa. 755, 790 A.2d 1013 (2001)).

A claim of excessiveness of sentence may raise a substantial question requiring the appellate court's review, even where the sentence is within the statutory limits. *Mouzon,* 812 A.2d at 626-28. Nonetheless, a sentencing court has not "abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." *Commonwealth v. Smith,* 673 A.2d 893 (Pa. 1996) (quoting *Commonwealth v. Lane,* 424 A.2d 1325, 1328 (Pa. 1981)).

The Supreme Court of Pennsylvania explained that "[d]eference is accorded to the trial court's pronouncement because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Ward,* 568 A.2d 1242, 1243 (Pa. 1990). Thus, a sentence will not be disturbed unless it was manifestly excessive or outside the statutory limits.

21

A-22

*Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa. Super. 1997). Sentencing judges are guided by the general principles of protecting the public, weighing the gravity of the offense in relation to its impact on the community and the life of the victim, and the defendant's rehabilitative needs. 42 Pa.C.S. §9721(b).

Sentencing judges are generally encouraged to adhere to the sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing. *Mouzone*, 812 A.2d at 620. Nonetheless, it is well-established that the guidelines are not mandatory, and that it is within the discretion of courts to sentence outside the guidelines. *Id.* at 621. There must be some indication that the sentencing judge understood the suggested range. *Commonwealth v. Tirado*, 870 A.2d 362, 366 (Pa.Super. 2005). If the sentence imposed is outside the guidelines, the trial judge must make the reasons for the sentence a part of the record. *Id.*; 42 Pa.C.S. §9721(b).

In this case, Appellant was sentenced to eighteen (18) to forty-two (42) years in a state correctional institution. The recommended sentence in the pre-sentence investigation report was not less than seventeen (17) to not more than thirty-four (34) years, which is an aggravated range sentence. According to information presented in the pre-sentence investigation report, Appellant has a lengthy criminal history out of New York, including theft and drug charges. The offenses in this matter were very serious. Appellant and his co-defendant entered individuals' homes and stole valuable items from them. The impact on the victims is significant. Appellant's conduct robbed them of a sense of security and safety within their homes. Appellant has minimal employment history. Based on the foregoing, a lengthy prison sentence was appropriate.

The sentence imposed was a departure from the sentencing guidelines and was beyond the aggravated range. As articulated at the time of sentencing on the record,[120] the reason for the departure was the nature of the offenses, the severity of the impact on the victims, and the

---

[120] N.T. Sentencing, at 40.

22

A-23

continuing criminal behavior exhibited by Appellant. Appellant and his co-defendant systematically sought out Class Act Landscaping clients' homes, essentially stalking the victims. They tore away the victims' senses of security in the sanctity of their homes, and the impact that had on all of them cannot be remedied. The sentence imposed on Appellant was legal and justified by the circumstances of the offenses. The sentence considered Appellant's rehabilitative needs while balancing the significant interests of society in being protected from future victimization by Appellant. The sentence was lawful and proper and within the Court's discretion to impose. No relief is due.

### Denial of the Motions in Limine

On December 5, 2012, Appellant, by and through counsel David D. Ritter, Esq., filed a Motion in Limine seeking to exclude hearsay within the prison phone calls between Appellant and Allison Wanamaker and between Lafantano and his wife. Appellant argued the statements from Ms. Wanamaker and Mrs. Lafantano amounted to hearsay because they were being offered for the truth of the matter asserted and were statements made by uncharged co-conspirators. The motion was denied on December 10, 2012 prior to the beginning of jury selection.

Hearsay is an out of court statement offered to prove the truth of the matter asserted. Pa.R.E. 801(c). Hearsay is inadmissible unless its admissibility is established through an exception in the Rules of Evidence, by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. One exception to the general rules pertaining to hearsay is the co-conspirator exception, which requires three elements: (a) existence of a conspiracy between the declarant and the defendant demonstrated by a preponderance of the evidence, (b) statements made during the course of the conspiracy, and (c) statements were made in furtherance of the common design. *Commonwealth v. Johnson*, 838 A.2d 663, 674 (Pa. 2004) (citation omitted). A conspiracy may

23

A-24

be inferentially established through relation, conduct, or circumstances of the parties. *Id.* at 675 (citations omitted). To demonstrate that statements are made in furtherance of a conspiracy, the Commonwealth need only show an intent to promote the conspiratorial objective. *Id.* Thus, statements made by third parties who are not involved in the conspiracy are not made in furtherance of the conspiracy. *Id.* at 676 (citing *United States v. Gibbs*, 739 F.2d 838, 845 (3d Cir. 1984) ("statements made to those who are not involved in the conspiracy are not 'in furtherance' of it")). However, conspiracy need not be formally charged for statements to function as co-conspirator statements. *Id.* at 675 (citing *Commonwealth v. Coccioletti*, 425 A.2d 387, 392 (Pa. 1981); *Commonwealth v. Dreibelbis*, 426 A.2d 1111 (Pa. 1981)).

In this case, the statements between Appellant and Allison Wanamaker and the statements between Lafantano and his wife were properly deemed admissible as statements of uncharged co-conspirators. While there was a conspiracy between Appellant and Lafantano, the Commonwealth demonstrated uncharged conspiracies between the two men and their respective paramours by a preponderance of the evidence. The crimes took place in February of 2012. In April of 2012, officers searched Fay Wanamaker's home and recovered certain property stolen from the Heimbach and Ciraulo residences. Fay Wanamaker's testimony indicated that she did not bring the items into her home. Accordingly, the only person besides her who would have direct access is Allison Wanamaker, Appellant's girlfriend.

The uncharged conspiracy supporting the admissibility of the conversations between the defendants and their paramours was a subsequent agreement to move the stolen items from a certain location to Mrs. Wanamaker's home. The women visited the defendants in prison on numerous occasions. Conversations between Appellant and Mrs. Wanamaker and Lafantano and his wife, even when omitting the women's statements and reviewing only the defendants',

24

demonstrated the existence of a conspiracy to relocate or transport the known stolen property. Under the preponderance of the evidence standard applicable in this context, *see Johnson*, 838 A.2d at 674 (citation omitted), the Court found that the statements were co-conspirator statements made during and in furtherance of an ongoing conspiracy between Appellant and Ms. Wanamaker and Lafantano and his wife. As such, the motion in limine was properly denied and the statements properly admitted under the co-conspirator statement exception to the hearsay rule.

*Request for a Limiting Instruction*

Appellant's final allegation of error is that the Court improperly denied a request for a limiting instruction pertaining to prison phone calls. Appellant requested a limiting instruction that the prison phone recordings be considered by the jury only for purposes of determining Appellant's guilt on the issue of the Receiving Stolen Property and Conspiracy to Commit Receiving Stolen Property charges.

As a general rule, when evidence is admissible only for a limited purpose, a defendant is entitled to a limiting instruction. *Commonwealth v. Covil*, 378 A.2d 841, 845 (Pa. 1977) (citation omitted). The Comment to Rule 647 of the Pennsylvania Rules of Criminal Procedure notes that "[t]he judge should determine what instructions to give based on the particular case." Pa.R.Crim.P. 647 cmt.

In this case, Appellant's counsel requested a limiting instruction on the jury's receipt and consideration of the prison phone calls. However, the Court determined that the phone calls were admissible not just for the limited purpose of establishing Receiving Stolen Property and Conspiracy to Commit Receiving Stolen Property, but for the jury's consideration of all the charges. As partially discussed in the context of the admission of uncharged co-conspirator

25

A-26

statements, while the recorded conversations were admissible under the co-conspirator statement exception, they are also evidence related to the Conspiracy to Commit Burglary and the other offenses. The evidence provided by these recordings was not admissible for a limited purpose; thus, no limiting instruction was required to be given and the Court properly denied Appellant's request. No relief is due on appeal.

### Conclusion

In sum, the jury's verdict with respect to the charges stemming from the Ciraulo burglary was consistent with the weight of the evidence and supported by sufficient evidence. Appellant's Motion for Reconsideration of Sentence was properly denied because the sentence, while outside the aggravated range, was proper and warranted under the circumstances and guided by the fundamental norms of sentencing. Appellant's motion in limine was properly denied and the statements of the uncharged co-conspirators were properly admitted, and Appellant was not entitled to a limiting instruction pertaining to prison phone call recordings. Thus, Appellant's issues raised in the within appeal are meritless and the Court respectfully recommends that the judgment of sentence be affirmed.

By the Court:

Douglas G. Reichley, J.

26

A-27